UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Katana B.<br>    Plaintiff,<br><br>v.<br><br>Frank Bisignano, Commissioner<br>    Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)<br>)   C.A. No. 1:25-cv-00150-AEM<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

AMY E. MOSES, United States Magistrate Judge.

    Plaintiff Katana is a 26-year-old who obtained her high school degree online due to anxiety that prevented her from attending high school in person. ECF No. 9 at 25, 40-41. Katana suffers from severe impairments of depressive disorder, anxiety disorder, agoraphobia, and an unspecified eating disorder. *Id.* at 20. She lives with her parents, does not have a driver's license, and leaves her home only sporadically when accompanied by a parent. *Id.* at 20-22, 39, 61. She has never worked. *Id.* at 25, 39. The Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denied Katana's claim for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). *Id.* at 14-27.

    With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. Based upon my review of the record, the parties' submissions, and independent research, I find that there is not substantial evidence in the record to support the Commissioner's decision and findings.

## I. PROCEDURAL HISTORY

Katana filed an application for SSI with an alleged onset date of November 1, 2015, later amended to August 13, 2022. ECF No. 9 at 17. Her application was initially denied on November 23, 2022 (*id.* at 59) and again on reconsideration on February 17, 2023 (*id.* at 74). Katana requested an Administrative Hearing that was held on October 27, 2023, before the Administrative Law Judge, Kate Dana (the "ALJ"). *Id.* at 31-58. At the hearing, Katana was represented by counsel and testified, and Vocational Expert ("VE") Edmond Calandra testified as well. *Id.* The ALJ issued a decision unfavorable to Katana on January 30, 2024. *Id.* at 14-30. The Appeals Council denied Katana's request for review on February 5, 2025. *Id.* at 4-9.

Katana timely appealed by filing her Complaint on April 11, 2025, seeking to reverse the decision of the Commissioner. ECF No. 1. On September 9, 2025, Katana filed Plaintiff's Motion to Reverse the Decision of the Commissioner. ECF No. 13. On September 26, 2025, the Commissioner filed Defendant's Motion for an Order Affirming the Decision of the Commissioner. ECF No. 14.

## II. ALJ DECISION

The ALJ must follow a five-step process in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at Steps One through Four, and the Commissioner bears the burden at Step Five. *Wells v. Barnhart*, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

Here, the ALJ determined at Step One that Katana had not worked at a level that rose to substantial gainful activity since the application date. ECF No. 9 at 19. At Step Two, the ALJ found that her depressive disorder, anxiety disorder, agoraphobia, and unspecified eating disorder were severe impairments. *Id.* at 20. At Step Three, the ALJ found that Katana did not have an

impairment or combination of impairments that met or medically equaled a Listing. *Id.* at 20-21. The ALJ determined that Katana had the Residual Functional Capacity ("RFC")[1] to perform a full range of work at all exertional levels. *Id.* at 22. The RFC contained the following non-exertional limitations: Katana can carry out simple instructions and tasks; perform goal-oriented tasks; frequently interact with supervisors; occasionally interact with coworkers and the public; occasionally tolerate changes in a routine work setting; and cannot perform time-pressured tasks with hourly production quotas and tasks that involve working in tandem with coworkers. *Id.* At Step Four, the ALJ determined that Katana had no past relevant work. *Id.* at 25. Relying on the testimony of the VE, the ALJ at Step Five found that Katana was not disabled because she could do a significant number of unskilled jobs in the national economy. *Id.* at 25-26.

### III.    STANDARD OF REVIEW

The Court's role in reviewing the Commissioner's decision is limited. *Brown v. Apfel*, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), *aff'd*, 230 F.3d 1347 (1st Cir. 2000) (per curiam). The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. *Thomas P. v. Kijakazi*, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), *report and recommendation adopted by text order*, (D.R.I. Mar. 31, 2022). Where "the Commissioner's decision is supported by substantial evidence, the [C]ourt must affirm, even if the [C]ourt would have reached a contrary result as finder of fact." *Tegan S. v. Saul*, 546 F. Supp. 3d 162, 168 (D.R.I. 2021); *Rodriguez Pagan v. Sec'y Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). Substantial evidence is "'such relevant evidence as a reasonable mind might

---

[1] RFC is "the most you can still do despite your limitations," considering "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The determination of substantiality is based upon an evaluation of the record as a whole. *Frustaglia v. Sec'y Health & Hum. Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); *Brown*, 71 F. Supp. 2d at 30. If the Court determines that the Commissioner's decision "is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g)." *Andrea T. v. Saul*, C.A. No. 19-505WES, 2020 WL 2115898, at *4 (D.R.I. May 4, 2020) (citing *Allen v. Colvin*, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015)).

In reviewing the Commissioner's decision, the Court must bear in mind that claimants "'are entitled to a broad construction of the Act. In practical terms, when a Social Security Act provision can be reasonably interpreted in favor of one seeking benefits, it should be so construed.'" *Ferguson v. Colvin*, 63 F. Supp. 3d 207, 211 (D.R.I. 2014) (quoting *Cunningham v. Harris*, 658 F. 2d 239, 243 (4th Cir. 1981)). Moreover, the Court of Appeals for the First Circuit has stated that "courts should ensure 'a just outcome' in Social Security disability claims." *Santa v. Astrue*, 924 F. Supp. 2d 386, 391 (D.R.I. 2013) (quoting *Pelletier v. Sec'y Health, Educ. & Welfare*, 525 F. 2d 158, 161 (1st Cir. 1975)).

## IV.   ANALYSIS

On appeal to this Court, Katana claims the ALJ erred as a matter of law in three ways: (A) in considering Katana's ability to work a normal workday and workweek; (B) in formulating Katana's RFC; and (C) in the Step 5 analysis. ECF No. 13 at 2. Katana seeks an order reversing the decision of the Commissioner and remanding for further proceedings. *Id*. at 12. The Commissioner moves to affirm the ALJ's decision, contending that: (A) Katana's RFC accounts

4

for her ability to work a normal workday and workweek; (B) the RFC assessment is supported by substantial evidence; and (C) the ALJ's analysis at Step 5 is adequately supported. ECF No. 14 at 1-2.

### A. Workday and Workweek

Katana contends that the ALJ erred by failing to consider her ability to work a normal workday and workweek. ECF No. 13 at 5-8. As this Court has previously held, "the RFC finding by definition 'is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.'" *Thomas L. v. O'Malley*, C.A. No. 24-00195-WES, 2024 WL 4948805, at *8 (D.R.I. Dec. 3, 2024) (quoting 61 Fed. Reg. 34474), *report and recommendation adopted by text order*, (D.R.I. Jan. 27, 2025). Katana's argument has been repeatedly dispatched in matters where Katana's counsel was attorney of record for the plaintiff, and similarly has no merit here. *See, e.g.*, *Joseph D. v. Bisignano,* No. 25-CV-00127-AEM, 2025 WL 3470305, at *6 (D.R.I. Dec. 3, 2025) (collecting cases).

### B. RFC

In support of her argument that the RFC assigned by the ALJ is not supported by substantial evidence, Katana argues that the ALJ "completely misstated and mischaracterized the record evidence" and "cherry-picked" facts that supported non-disability. ECF No. 13 at 7, 9. Instead of parsing the ALJ's analysis of the medical evidence and RFC as Katana invites the Court to do, I find that the ALJ's reliance upon the state agency consultants' opinions was error because those opinions did not consider the full medical record, as neither of the state agency consultants had the treating therapist records. Furthermore, the ALJ improperly sought to justify reliance on the state agency consultants' opinions through a post-hac rationalization of the records that the state agency

5

consultants did not review. Finally, the ALJ attempted to reconcile the record against Katana's subjective statements.

### 1. State Agency Consultants Lacked Complete Record

In formulating Katana's RFC, the ALJ relied upon the opinions of the state agency consultants, Dr. Pamela Steadman-Wood, Ph.D. and Dr. Jeffrey Hughes, Psy.D. ECF No. 9 at 24. Dr. Steadman-Wood completed her evaluation of Katana's case on November 10, 2022, and based her evaluation on the following evidence: Katana's work history, Katana's Adult Function Report, the Adult Function Report completed by Katana's mother, and the Consultative Examination completed by Dr. Louis Cerbo, Ed.D. *Id.* at 60-61. Dr. Steadman-Wood did not have any of the records from Katana's treating therapist, LICSW Alyssa Goulet-Almeida. Dr. Steadman-Wood's report noted that she "tried to get records from the source [therapist], unsuccessful." *Id.* at 61. She further noted that, "[Katana] is reportedly receiving counseling, but no treatment source records were provided."[2] *Id.* at 62.

Dr. Hughes completed his evaluation on February 15, 2023, and reviewed the same evidence of record that Dr. Steadman-Wood reviewed, plus the then-available records from Katana's primary care provider, Osteopathic Family Medicine. *Id.* at 67-68. Dr. Hughes, like Dr. Steadman-Wood, did not have the files from Katana's treating therapist. Dr. Hughes noted that Katana's allegations at the reconsideration level pertain specifically to her claim that she "can barely leave [] home for any period of time over an hour." *Id.* at 68. He also noted that her "therapist has not returned records despite 2 separate requests." *Id.* at 69.

---

[2] It is unclear why Ms. Goulet-Almeida's records were not timely produced, but Dr. Steadman-Wood documented that Katana's mother stated that Ms. Goulet-Almeida was "now on leave." ECF No. 9 at 61.

At the hearing before the ALJ on October 27, 2023, Katana testified that she had been seeing her treating therapist since 2019. *Id.* at 42. The ALJ acknowledged it was "important that we do have a full record" and left the record open so that Katana could submit the medical records from her therapist. *Id.* at 43-44. The treating therapist's records—over one hundred pages—were ultimately produced and reviewed by the ALJ. *Id.* at 241-87, 306-42, 351-429. Neither Dr. Hughes nor Dr. Steadman-Wood saw any of these records.

The ALJ's conclusion that the opinions of Dr. Steadman-Wood and Dr. Hughes were persuasive and "generally supported by their review of the evidence as detailed in their narrative discussions," (*id.* at 24) was in error because these state agency consultants lacked access to the entire record. *See Mary K. v. Berryhill*, 317 F. Supp. 3d 664, 668 (D.R.I. 2018) (remanding case where state agency consultants did not have entire record before them when forming their opinions). Katana had over one hundred pages of relevant medical evidence that was not available to the state agency consultants. ECF No. 9 at 241-87, 306-42, 351-429; *see Mary K.*, 317 F. Supp. 3d at 668 ("The non-examining doctors, then, could not have thoroughly reviewed the relevant evidence because they did not have all of it before them."). Because the state agency consultants' opinions were based on an incomplete record, the RFC was not supported by substantial evidence.

### 2. ALJ's Post-Hac Rationalization

The ALJ conducted a post-hac rationalization of her reliance on the state agency consultants' opinions, concluding that the state agency consultants' opinions were consistent with the records from Katana's treating therapist. ECF No. 9 at 24 (noting that the state agency consultants' opinions "remain consistent with post-assessment evidence.") To bolster this conclusion, the ALJ stated that although the state agency consultants "did not specifically define the level in social interactions with others, their overall evaluation is not inconsistent with the evidence of record, which supports limiting social interactions." *Id*. The ALJ additionally

7

indicated that Katana experiences "symptom exacerbation with stress" and that the medical records demonstrate "periodic abnormal findings such as anxious mood" (*id.*), both gleaned from the ALJ's own review of the treating therapist's records. Under these circumstances, the ALJ should not have substituted her judgment for that of the state agency consultants in concluding that the medical evidence missing from such opinions was consistent. *See Alcantara v. Astrue*, 257 F. App'x 333, 334 (1st Cir. 2007) (per curiam) ("Absent a medical advisor's or consultant's assessment of the full record, the ALJ effectively substituted his own judgment for medical opinion."). The Court rejects these post-hac rationalization and finds that this case, like *Mary K.*, presents a situation where the "Court does not know whether the non-examining state agency physicians would have rendered the same . . . opinions if they had all of the medical evidence." 317 F. Supp. 3d at 668. In such situations, remand is necessary. *See Sandra C. v. Saul*, C.A. No. 18-375JJM, 2019 WL 4127363, at *6 (D.R.I. Aug. 30, 2019) ("Remand is necessary to allow for an error-free evaluation of the complete record.").

### 3. ALJ's Discounting of Katana's Statements

The ALJ incorrectly concluded that Katana's "ability to engage in several activities" was inconsistent with "the level of impairment" she alleged. ECF No. 9 at 23. The ALJ cited activities such as writing stories, reading, playing boardgames, walking her dog, and performing light household chores (such as emptying the dishwasher and occasionally doing laundry)—essentially using evidence of activities Katana can do inside or close to the home to contradict her subjective statements regarding her inability to function outside of the home. *Id.* at 20-21, 23, 48; *see id.* at 196-202 (function report in which Katana states she can not "interact with people outside of my very close family;" is "afraid to drive" and does not have a driver's license; "do[es] not go anywhere on a regular basis, only periodically which may be once/month"; and has a general uncontrollable "irrational fear"). The ALJ noted that Katana could leave her home in the limited

circumstances where her parents drove her to an appointment or to the store and that she "has a network of friends with whom she communicates regularly" (ignoring that the record indicates she primarily interacts with friends online), ultimately concluding she has a "general ability to function in public places and situations with relatively low social demands." *Id.* at 20, 23, 197, 240. Katana's treating therapist's notes, however, support Katana's self-reported struggles with even minimal social encounters outside the home. *Id.* at 22, 40, 68. Therefore, the ALJ erred in discounting Katana's statements as inconsistent with the medical evidence in the record and the resulting RFC is not supported by substantial evidence.

### C. Step 5 Analysis

Katana's final argument is that the Commissioner erred by failing to satisfy the burden at Step 5. Attorney Gannon is reminded that the Step 5 argument he sets forth claiming that jobs with a GED reasoning level of 2 or 3 are inconsistent with an RFC limitation to simple and unskilled tasks is not good law and has been rejected by this Court. *See Gianna S. v. Bisignano*, C.A. No. 25-100-PAS, 2025 WL 3443475, at *4 (Dec. 1, 2025) (collecting cases).

### V. CONCLUSION

The Court concludes that the Commissioner's findings are not supported by substantial evidence, 42 U.S.C. § 405(g), where, as here, the ALJ relied upon the state agency consultants' opinions that did not consider the entire record and improperly reconciled the later-produced evidence. Consistent with the requirement that the Social Security Act be "liberally applied," *Ferguson*, 63 F. Supp. 3d at 211, this Court finds that remand is required for the state agency consultants to consider the entire record, including the treating therapist's notes with respect to Katana's RFC.

For the reasons discussed herein, Plaintiff's Motion to Reverse the Decision of the Commissioner and remand for further proceedings (ECF No. 13) is GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) is DENIED. The Clerk shall enter Final Judgment in favor of Plaintiff.


 /s/  Amy E. Moses
AMY E. MOSES
United States Magistrate Judge


January 23, 2026